UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO M.F., | |
| Petitioner, | No. 1:26-cv-03430-TLN-JDP |
| | A # 240-096-692 |
| v. | |
| WARDEN OF GOLDEN STATE ANNEX DETENTION FACILITY, et al., | **RELEASE ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner Eduardo M.F.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Respondent filed an opposition.  (ECF No. 10.)  For the reasons set forth below, Petitioner's habeas petition is GRANTED.  (ECF No. 1.)

///

///

///

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States on October 17, 2022.  (ECF No. 1 at 5; ECF No. 10 at 10.)  He was processed by immigration authorities and granted conditional release into the United States.  (ECF No. 1 at 5; ECF No. 10 at 3.)  Petitioner maintains that he complied with the terms of his release, was self-employed, and paid taxes.  (ECF No. 1 at 5, 6.)  Petitioner's immigration case remains pending.  (ECF No. 10 at 6.)

On March 29, 2026, Petitioner was arrested for misdemeanor driving under the influence by the Collier County Sheriffs Office in Florida.  (*Id.* at 6, 11–12.)  Immigration and Customs Enforcement ("ICE") placed a detainer on Petitioner.  (*Id.* at 6.)  After Petitioner posted bond on the DUI charge, he was transferred to ICE custody on March 30, 2026.  (*Id.* at 7.)  Petitioner was transferred between immigration detention facilities in Florida, Arizona, and Colorado before arriving to his current location at the Golden State Annex Detention Facility.  (ECF No. 1 at 6–7.)

On May 4, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 17–18.)

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

### III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 17–18.)  In opposition, Respondent contends Petitioner does not possess a liberty interest because he had an encounter with law enforcement and because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 10 at 1–3.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  The Government's decision to release Petitioner into this country after his initial encounter with immigration authorities was an "implicit promise" that he would

not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner maintains that he complied with the terms of his release, and there is nothing in the record showing Petitioner has been found to have violated the terms of his release. (ECF No. 1 at 5; *see generally* ECF No. 10.)

Respondent argues Petitioner does not have a liberty interest because he "(1) had an encounter with law enforcement; [and] (2) was re-detained as a result of that." (ECF No. 10 at 3.) Respondent provides no citation to law or the record in support of this statement. (*Id.*) As an initial matter, although Petitioner was detained *after* an encounter with local law enforcement, there is nothing on the record to suggest he was detained *because* of that encounter. (*See id.* at 4–7.) The Government's documents do not specify the reason why ICE placed a detainer on Petitioner. (*Id.* at 6.) Respondent submits no evidence of a warrant. At most, the record suggests Petitioner was detained solely because of his immigration status. (*Id.*)

As to Respondent's first point, Respondent provides no authority, and this Court is aware of none, establishing that an encounter with law enforcement strips an individual of their liberty interest. Even if such an encounter were a violation of the terms of Petitioner's release, it does not follow that Petitioner's liberty interest is then immediately and automatically lost. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (similarly noting that "even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing."); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding detention of asylum applicant improper even if she violated the conditions of her release because she was not a danger to society or a flight risk).

In the present context, Petitioner's conditional release from immigration custody is analogous to parole, and it has long been recognized that a parolee's liberty interest is lost at the time parole is revoked, not before. *Moody v. Daggett*, 429 U.S. 78, 87 (1976); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."). Until parole is rescinded and the parolee

4

is taken into custody for the violation of parole, the "prospect of future incarceration which is far from certain," has no "present or inevitable effect upon the liberty interests which *Morrissey* sought to protect." *Moody*, 429 U.S. at 87; *see also Drayton v. McCall*, 584 F.2d 1208, 1214 (2d Cir. 1978) ("The Government's assertion that a parole grantee is entitled to no due process procedural protections prior to recission of his parole grant is untenable."). The Court thus rejects Respondent's assertion that Petitioner has no liberty interest by reason of an encounter with law enforcement when there has been no determination that he has in fact violated the terms of his release nor has a decision been made to rescind his release for that reason. *See Vargas Monsalve v. Chestnut*, No. 1:26-CV-00626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026) (rejecting the Government's proposition that a petitioner's DUI arrest justifies re-detaining him without due process); *Rodriguez Cruz v. Warden of the Golden State Annex*, No. 1:26-CV-00348-DAD-SCR, 2026 WL 453561, at *2 (E.D. Cal. Feb. 18, 2026), report and recommendation adopted, No. 1:26-CV-00348-DAD-SCR, 2026 WL 564588 (E.D. Cal. Feb. 27, 2026) (same).

Respondent's argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2) also fails. Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondent's argument on the applicability of § 1225(b)(2) to paroled or released noncitizens. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting

cases).  Respondent puts forth no new arguments or facts justifying a different conclusion in this case.

Accordingly, the Court rejects Respondent's arguments and finds Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

B.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes.  *Hernandez*, 872 F.3d 976.  As Respondent does not argue Petitioner is a danger to the public or a flight risk, and given that he was previously found eligible for release by immigration authorities and recently granted bond by local authorities, the risk that Petitioner is being detained without proper justification is exceedingly high.  *A.E. v. Andrews*, No.

6

1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondent.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified.  He received neither.  Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  IT IS HEREBY ORDERED:

1.    Respondent must IMMEDIATELY RELEASE Petitioner Eduardo M.F. (A # 240-096-692) from custody under the same conditions he was released prior to his current detention. At the time of release, Respondent must return all of Petitioner's documents and possessions. **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.    **The Clerk of Court is directed to serve Golden State Annex Detention Facility**

with a copy of this Order.

4.  The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 14, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE